**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re:<br><br>MICHAEL E. DYER,<br><br>Debtor | ) ) ) ) ) ) ) | Chapter 7<br>Case No. 16-40063-CJP |
| ROBERT JONES,<br><br>Plaintiff<br><br>v.<br><br>MICHAEL E. DYER,<br><br>Defendant | ) ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding<br>No. 16-4038-CJP |

**MEMORANDUM OF DECISION**

Before the Court is the *Motion for Summary Judgment or[,] in the Alternative, Judgment on the Pleadings* (the "Motion") and the *Memorandum of Law In Support [of the Motion]* filed by the defendant Michael E. Dyer ("Defendant" or "Dyer"), seeking judgment in his favor with respect to all counts of the complaint (the "Complaint") filed by the plaintiff Robert Jones ("Plaintiff" or "Jones") in this adversary proceeding, and the *Response to Defendant's Motion for Summary Judgment and Request for Summary Judgment* (the "Cross-Motion," together with the Motion, the "Motions") and a *Memorandum of Law [in support of the Cross-Motion]* filed by Jones.

Through the Complaint, Jones, Dyer's former father-in-law, asserts that a separation agreement between his daughter and Dyer created an obligation for Dyer to pay Jones certain

1

funds and that such obligation should be determined to be a non-dischargeable debt under 11 U.S.C. § 523(a)(4) and (6).[1] In failing to pay him, Jones argues that Dyer defalcated as a fiduciary, embezzled funds, and willfully and maliciously injured Jones. After a hearing on the Motions, the Court took the matters under advisement. For the reasons discussed below, the Defendant's Motion is GRANTED, and the Plaintiff's Cross-Motion is DENIED.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and 1334(b) and Local Rule 201 of the United States District Court for the District of Massachusetts. A determination of the dischargeability of a debt under § 523(a)(4) and (6) is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## II. Facts

The following facts are undisputed.[2] While Dyer was married to Jones's daughter, Christine ("Ms. Dyer"), the Dyers borrowed funds from Jones. Compl. ¶ 4[3]; Def.'s Mem. ¶ 2. On June 28, 2013, the Defendant and Ms. Dyer divorced pursuant to a Judgment of Divorce Nisi (the "Judgment") entered by the Essex Probate and Family Court (the "Probate Court"). Compl. ¶ 4.1; Def.'s Mem. ¶ 3. The Judgment approved and incorporated a separation agreement (the

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

[2] Both Rule 56 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 56.1 of the United States District Court for the District of Massachusetts, made applicable by Local Bankruptcy Rule 7056-1 of the United States Bankruptcy Court for the District of Massachusetts, contemplate that statements of undisputed facts are to be submitted with motions for summary judgment, as well as relevant supporting documentation. When such documentation is omitted or if a party fails to address a material fact, Civil Rule 56(e) provides the Court with several alternatives, including that "the court may . . . (2) consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

[3] The Complaint includes two paragraphs numbered "4." The Court will refer to the first number 4 paragraph as "¶ 4" and the second paragraph as "¶ 4.1."

"Agreement"). *See* Compl. ¶ 4.1; Def.'s Mem. ¶ 3. Exhibit D to the Agreement, captioned "Liabilities," provided that: "[u]pon the transfer to the Husband of the Wife's interest in her Boston Medical Center 401(k), the Husband shall pay the following outstanding marital liabilities[.]" Compl. ¶ 4.1; Def.'s Mem. ¶ 4. Various creditors were listed and appear to have been numbered and modified by handwritten markings and comments, initialed by "CD" and "MD." *See* Compl. Ex. 1, Agreement Ex. D ¶ 3; Def.'s Mem. ¶ 4. The liabilities included: (1) approximately $13,000 owed to the Internal Revenue Service for 2011–2012 tax obligations, (2) $4,800 owed to the Town of North Andover for preschool, (3) an unknown amount owed to Sears for a furnace installation "consistent w/the contract dated 11/14/2012," (4) approximately $20,000 owed to Metro Credit Union, (5) approximately $6,800 owed to Capital One for credit card charges, (6) approximately $5,000 owed to Home Depot for credit card charges, (7) approximately $2,000 owed to Discover for credit card charges, and (8) $468.54 owed to Comcast. *See* Agreement Ex. D ¶ 3; Def.'s Mem. ¶ 4. Following the listing of liabilities was a provision stating that:

> Any money remaining after payment of taxes and fees due upon the liquidation of the retirement account, and the above marital debts, shall be paid toward the unsecured loan from the Wife's father. In the event there are insufficient funds to pay off all of the above marital debt, the parties shall pay the remaining balances in equal shares.

Agreement Ex. D ¶ 3; Def.'s Mem. ¶ 4.

Exhibit H of the Agreement addressed the division of the Dyers' property. *See* Agreement Ex. H. A subpart to Exhibit H captioned "Retirement Accounts," provided in relevant part that:

> The Wife has a 403(B) through Boston Medical Center as set forth on her financial statement. Within thirty (30) days of the entry of the Judgment of Divorce Nisi, the Wife shall transfer to the Husband 100% of the value of her 403(B), valued as of the date the account is divided.

3

Agreement Ex. H ¶ B. The parties confirmed on the record that the references to "401(k)" and "403(b)" accounts in the Agreement were used interchangeably and referenced the same retirement account of Ms. Dyer through Boston Medical Center (the "Retirement Account").

Of the $92,463.53 that was redeemed from the Retirement Account, $70,890.00 was distributed to the Defendant. Pl.'s Mem. ¶¶ 6–7; *see* Def.'s Resp. ¶ 1 (failing to dispute such facts). Dyer "may have paid a portion of the marital debts listed in the [Agreement] totaling $29,102.50," Pl.'s Mem. ¶ 10; *see* Def.'s Resp. ¶1 (failing to dispute such fact), but he did not satisfy the unsecured debt owed to Jones. According to the schedules filed in support of Dyer's chapter 7 bankruptcy petition, which was filed on January 21, 2016, Jones holds a general unsecured claim against Dyer in the amount of $55,219.96. *See* Compl. ¶¶ 1–2; Def.'s Mem. ¶¶ 1–2.

Ms. Dyer died before Jones commenced this adversary proceeding. *See* Compl. ¶ 4; Def.'s Mem. ¶ 13. Jones initially had filed the Complaint on his own behalf, as well as on behalf of the "Estate of Christine Dyer." The Court dismissed the Estate of Christine Dyer as co-plaintiff because there was no personal representative appointed for Ms. Dyer's probate estate at the time the Complaint was filed, and Jones conceded that Ms. Dyer's probate estate was not damaged financially by Dyer's failure to pay Jones and the marital creditors set forth in the Agreement[4] as no creditor filed a claim against her estate in the year following her death.

---

[4] The debt to the Estate of Christine Dyer was described in the Complaint as "a debt of all moneys which the Essex County Probate Court ordered the Debtor pay towards the Debtor's and Christine Dyer's joint marital debt described in its Order of June 28, 2013, from Christine Dyer's 401(k) Plan, which the Debtor willfully failed to pay to the detriment of those unpaid creditors including the Estate of Christine Dyer and Jones." Compl. ¶ 3.

**III.　Positions of the Parties**

Dyer moves for summary judgment on all counts of the Complaint.[5] He emphasizes that Jones's claims are based on Dyer's failure to comply with the disbursement provisions under the Agreement, not the circumstances surrounding Jones loaning funds to the Dyers while they were married. Dyer contends that Jones does not have "standing" to bring the dischargeability claims because Jones was not a party to the Agreement, did not become Dyer's creditor as a result of the Agreement, and did not have any property interest in the Retirement Account proceeds that were turned over to Dyer for disbursement pursuant to the Agreement.

Jones, in turn, seeks summary judgment in his favor on all counts of the Complaint, arguing that his debt should not be discharged in Dyer's chapter 7 case since Dyer's "failure . . . to obey the Probate Court Order requiring the 401(k) transfer of marital property be paid to specific marital creditors[,]" Pl.'s Mem. ¶ 13, constituted both a defalcation while acting in a fiduciary capacity and embezzlement pursuant to § 523(a)(4).  With respect to the defalcation allegations, Jones asserts that Dyer's failure to obey the Agreement is a "defalcation while acting in a fiduciary capacity" that harmed Jones because Dyer held the Retirement Account proceeds "pursuant to an express trust created by the Probate Court Order" which charged him with "a specific duty . . . for the benefit of both his ex-spouse and their marital creditors to pay over the 401(k) funds as ordered."[6] Pl.'s Mem. ¶ 13, Argument § 1.

Jones also contends that Dyer's failure to distribute the Retirement Account proceeds to

---

[5] The parties have agreed that the matter is appropriate for summary judgment. *See* Pl.'s Cross-Mot. 1; Def.'s Mot. 1.

[6] Jones contends that Dyer used at least some of the Retirement Account proceeds "for his own purposes," only to assert in the same section that Dyer "has not explained his use of the [funds]." Pl.'s Mem., Argument § 1.

5

marital creditors in accordance with the Agreement is "embezzlement with respect to [Jones]," Pl.'s Mem. ¶ 14, that renders Dyer's debt to Jones nondischargeable under § 523(a)(4) because Dyer "received the property of another" pursuant to the Agreement but "failed to account for the $70,890.00 received and/or converted at least $41,787.41 to his own use" in violation of the Agreement. Pl.'s Mem., Argument § 2.

Finally, Jones asserts that the debt Dyer owes him arises from "a willful and malicious injury by the [Defendant] upon [Jones]" that is nondischargeable under § 523(a)(6), Pl.'s Mem. ¶ 15, because Dyer "had to know that injury to [Jones] was substantially certain to occur as a result of" Dyer "convert[ing] at least $41,787.41 to his own use" instead of paying marital creditors, Pl.'s Mem., Argument § 3.[7]

As to Dyer's challenge to Jones's standing, Jones highlights the fact that Dyer has acknowledged that Jones is one of his creditors. Jones also asserts that he has standing to bring the nondischargeability claims because he "is a named beneficiary of the express [t]rust established by the Probate Court Order." Pl.'s Mem., Argument § 4.

## IV. Applicable Law

Pursuant to Civil Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining cross-motions for summary judgment, the Court "must resolve all genuine factual disputes in favor of the party opposing each such motion and draw all reasonable inferences derived from the facts in that party's favor[,]" *Atlantic Fish*

---

[7] Although not relevant to the Court's ultimate determination in this matter, the parties appear to dispute and, in any event, did not fully develop the record regarding which debts Dyer paid and in what amounts. Nevertheless, according to Dyer, even if there were a trust, Jones's damages under the alleged trust would be substantially less than the original $55,219.96 unsecured debt amount. Dyer's calculations show that, after subtracting from the $70,890 in net Retirement Account proceeds certain payments made to marital creditors, only $4,078.37 would have remained to pay Jones's unsecured claim. *See* Def.'s Resp. Ex. 1.

6

*Spotters Ass'n v. Evans*, 321 F.3d 220, 224 (1st Cir. 2003), by evaluating "each motion separately, drawing inferences against each movant in turn" *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 n.8 (1st Cir. 1995).

"A dispute is 'genuine' if the record permits a sensible factfinder to decide it in either party's favor." *Eldridge v. Gordon Bros. Grp., LLC*, 863 F.3d 66, 77 (1st Cir. 2017). "[A] fact is 'material' if its existence or nonexistence 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The parties agree that there is no genuine dispute as to any material fact relevant to the matters at hand.

Section 523 sets forth various exceptions to discharge, providing, in relevant part, that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
> . . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;
> . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(4), (6). "The standard of proof of each element of a § 523 claim is by a preponderance of the evidence." *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997). "The burden of proof and the burden of production as to each element rests with the party contesting the dischargeability of a particular debt." *Id.* "The exception is strictly construed in favor of the debtor in order to comply with the 'fresh start' policy underlying the Bankruptcy Code." *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012). "[A]ny creditor" can bring a nondischargeability claim. Fed. R. Bankr. P. 4007(a).

"[A] creditor must establish three elements to invoke the § 523(a)(4) exception to

7

dischargeability" based on fraud or defalcation while acting in a fiduciary capacity. *Fahey*, 482 B.R. at 687. They are: "(1) the debt results from a fiduciary's fraud or defalcation under an 'express' or 'technical trust'; (2) the debtor acted in a fiduciary capacity with respect to that trust; and (3) the debt was caused by a fraud or defalcation within the meaning of bankruptcy law." *Stallworth v. McBride (In re McBride)*, 512 B.R. 103, 113 (Bankr. D. Mass. 2014) (citing *Fahey*, 482 B.R. at 687). "The *sine qua non* of the test is that the debtor must have been acting in a fiduciary capacity when the fraud or defalcation occurred." *In re Marano*, 568 B.R. 723, 730 (Bankr. D. Mass. 2017). "'[F]or the debt to be nondischargeable under section 523(a)(4), it must be directly related to the fiduciary relationship between the debtor and the creditor . . . . A threshold inquiry is whether a fiduciary obligation runs from the debtor to the creditor.'" *In re Maggio*, 518 B.R. 179, 190–91 (Bankr. D. Mass. 2014) (quoting *In re Marbury*, Case No. 09-13017, 2009 WL 4639599, at *2 (Bankr. D. Md. Dec. 2, 2009)).

Although federal law determines "[w]hether a debtor is acting as a fiduciary[,] state law will dictate the nature of the trust relationship, if any." *Marano*, 568 B.R. at 730.

> The broad definition of fiduciary under nonbankruptcy law—a relationship involving trust, confidence, and good faith—is inapplicable in the nondischargeability context. Under federal law, a fiduciary relationship arises by virtue of an express or technical trust. The elements of an express trust have traditionally included an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust relationship. A technical trust is one that arises under statute or common law.

*Levitsky v. McPherson (In re McPherson)*, 564 B.R. 6, 17–18 (Bankr. D. Mass. 2017) (internal citations and quotation marks omitted). "In order to be acting as a fiduciary, a party must be acting pursuant to an express or technical trust, not a trust which the law implies from a contract." *Breed's Hill Ins. Agency v. Fravel (In re Fravel)*, 485 B.R. 1, 14 (Bankr. D. Mass. 2013). "An express trust requires a declaration of trust and intent to create a trust relationship

8

with respect to a clearly defined res. Under Massachusetts state law, an express trust exists if there is: 1) intent to create a trust, 2) a specific trust res, and 3) identifiable beneficiaries." *Greene v. Mullarkey (In re Mullarkey)*, 410 B.R. 338, 351 (Bankr. D. Mass. 2009) (internal citations and quotation marks omitted). In contrast "where the basis for the existence of a technical trust is statutory, the statute must (1) define the trust res, (2) spell out the trustee's fiduciary duties, and (3) impose a trust prior to and without reference to the wrong that created the debt." *Fravel*, 485 B.R. at 14 (internal quotations, brackets, and citations omitted).

"Whether a[n express] trust was created depends upon the intention of the parties 'manifested by their words and conduct and the end to be accomplished.'" *Carpenter v. Suffolk Franklin Sav. Bank*, 291 N.E.2d 609, 614 (1973) (citing *Povey v. Colonial Beacon Oil Co.*, 200 N.E. 891, 894 (1935)). As provided by the Restatement (Third) of Trusts:

> In determining the intention of the transferor, the following circumstances[,] among others[,] may be important: (1) the specific terms and overall tenor of the words used; (2) the definiteness or indefiniteness of the property involved; (3) the ease or difficulty of ascertaining possible trust purposes and terms, and the specificity or vagueness of the possible beneficiaries and their interests; (4) the interests or motives and the nature and degree of concerns that may reasonably be supposed to have influenced the transferor; (5) the financial situation, dependencies, and expectations of the parties; (6) the transferor's prior conduct, statements, and relationships with respect to possible trust beneficiaries; (7) the personal and any fiduciary relationships between the transferor and the transferee; (8) other dispositions the transferor is making or has made of his or her wealth; and (9) whether the result of construing the disposition as involving a trust or not would be such as a person in the situation of the transferor would be likely to desire.

Restatement (Third) of Trusts § 13, Comment d. (Am. Law. Inst. 2003).

Further, a "suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary. . . ." Restatement (Third) of Trusts § 94(1); *see also Nickless v. Aaronson (In re Katz)*, 341 B.R. 123, 133 (Bankr. D. Mass. 2006) (determining that "generally only a beneficiary or one suing on his behalf can maintain a

9

suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust" (quoting Restatement (Second) of Trusts § 200)). "A person is a beneficiary of a trust if the settlor manifests an intention to give the person a beneficial interest; a person who merely benefits incidentally from the performance of the trust is not a beneficiary." Restatement (Third) of Trusts § 48.

For the purposes of § 523(a)(4), "[e]mbezzlement is the fraudulent conversion of the property of another by one who is already in lawful possession of it." *Sherman v. Potapov (In re Sherman)*, 603 F.3d 11, 13 (1st Cir. 2010) (internal quotation marks omitted). It "requires proof that (i) property in the perpetrator's lawful possession but (ii) belonging to another (iii) was appropriated by the perpetrator in a manner inconsistent with the property rights of the other and the scope of his or her authorization to deal with the property (iv) with fraudulent intent." *Matthews v. Nealon (In re Nealon)*, 532 B.R. 412, 424 (Bankr. D. Mass. 2015) (citing *Reiss v. McQuillin (In re McQuillin)*, 509 B.R. 773, 785 (Bankr. D. Mass. 2014)). "Embezzlement does not require the existence of a fiduciary relationship." *Zacharakis v. Melo (In re Melo)*, 558 B.R. 521, 558 (Bankr. D. Mass. 2016) (quoting *Farley v. Romano (In re Romano)*, 353 B.R. 738, 765 (Bankr. D. Mass. 2006)).

Section 523(a)(6) renders nondischargeable a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." For § 523(a)(6) to apply, "the creditor must show that (1) the debtor injured the creditor or the creditor's property (2) willfully (3) and maliciously, (4) and such injury gave rise to the debt at issue." *Cordeiro v. Kirwan (In re Kirwan)*, 558 B.R. 9, 13 (Bankr. D. Mass. 2016).

**V. Analysis**

The parties do not dispute that Jones is one of Dyer's creditors, as Dyer owes Jones

$55,219.96 on account of the unsecured debt the Dyers jointly incurred while they were married. This is not, however, the "debt" Jones now seeks to have declared nondischargeable.[8] The debt as to which Jones seeks a determination of nondischargeability arises from a separate purported obligation owed to him, which he contends arose when the Probate Court approved the Agreement and proceeds of the Retirement Account were delivered to the Defendant. As discussed below, on this record, the Court concludes that there was no express trust created by the Agreement with respect to which Jones was a beneficiary; Dyer owed no fiduciary duty to Jones under the Agreement; Jones had no property interest in the Retirement Account proceeds; and nonpayment did not give rise to the alleged injury at issue. As such, no debt arose that could be determined to be nondischargeable under § 523(a)(4) and (6) and summary judgment will enter in favor of Dyer.

First, Jones cannot show that Dyer engaged in "fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4) because Jones has failed to cite to any facts in the record that could support a finding that the Dyers intended to create an express trust under which Dyer owed a fiduciary duty to Jones as beneficiary. *See, e.g., Mullarkey*, 410 B.R. at 351 (determining that an express trust requires intent to create a trust). While a trust may be found "where money passes from A to B for the specific purpose of being turned over by B to C to pay off an obligation owed by A to C," *Carpenter*, 291 N.E.2d at 615, this Court need not determine whether the Dyers entered into a trust with respect to the Retirement Account proceeds where Dyer held those proceeds to be used for a specific purpose for the benefit of Ms. Dyer. Even if there were a trust established between the Dyers, Jones has not shown that he was intended to be

---

[8] While Jones described the debt owed to him as arising at the time he loaned funds to the Dyers in the Complaint, he clarified in his Cross-Motion and on the record in open Court that he contends that a new obligation later arose with respect to repayment of the original debt.

11

a beneficiary of such trust as opposed to "a person who merely benefits incidentally from the performance of the trust." *See* Restatement (Third) of Trusts § 48. This was not a typical private trust transaction in which a settlor may have transferred funds to a trustee to hold in trust for a beneficiary. Rather, the Defendant and his then-wife entered into a separation agreement in divorce proceedings. The express purpose of the Agreement and subsequent divorce decree was to settle and determine various rights and obligations of the Dyers, including how to divide the couple's property and establish responsibilities to pay their debts. *See* Agreement § I, Exs. D, H. The Agreement effected a division of the couple's property, partly by requiring Ms. Dyer to liquidate the Retirement Account and to turn over the net proceeds of that account to the Defendant. The Dyers' marital liabilities would then be satisfied as set forth in § 3 of Exhibit D to the Agreement. Under the Agreement, Dyer was to pay Jones only with "[a]ny money remaining after payment of taxes and fees due upon the liquidation of the retirement account." Agreement Ex. D § 3. If there were no funds left, the Dyers were to be equally responsible for their marital debts. *See id*. On these facts, the Court cannot conclude that Jones was intended to have a beneficial interest in a trust created by the Agreement.

Rather, Jones was a creditor of the Dyers whose debt was addressed in a separation agreement dealing with other matters relevant to their divorce. A "debt is not a trust," *Carpenter*, 291 N.E.2d at 614 (citing Restatement (Second) of Trusts § 12 (Am. Law Inst. 1959)), and the Agreement did not change the fact that Dyer was merely indebted to Jones on account of an unsecured loan. *See* Restatement (Third) of Trusts § 5(k) (stating that "relationships of debtors to creditors" are not trusts). That the Defendant may have had a fiduciary duty to Ms. Dyer "does not bootstrap that duty to third-party creditors of the person owed the duty." *Maggio*, 518 B.R. at 191 (finding, in the context of a fiduciary duty created by a durable power of attorney, that

"[w]hile the state court determined that the Debtor's breach of her duties to [principal] injured the Plaintiffs, the Superior Court did not address the issue of whether the Debtor also owed [them] fiduciary duties " and concluding that "the fact that the Debtor had a fiduciary duty to [the principal], on the existing record, does not bootstrap that duty to third-party creditors of the person owed the duty or the Debtor."). Without more, the Court cannot conclude that the Agreement established a fiduciary duty for Dyer to pay Jones that would be enforceable by Jones. Certainly, there is no evidence in the record of an intent on the part of Dyer to undertake a fiduciary relationship with Jones or any other creditor. The terms of the Agreement are not sufficient to establish a trust in which Jones was intended to possess a beneficial interest as opposed to merely benefit from the terms of the Agreement between the Dyers. Accordingly, there is no genuine issue of material fact in this record which, if determined in favor of Jones or if a reasonable inference was drawn therefrom, could establish that the Agreement established an express trust for the benefit of Jones.

In addition, Jones points to no statute that would have created a technical trust for his benefit. "Those courts which have determined that the plaintiff sustained its burden of proof under § 523(a)(4) have either relied upon state statutes which require agents to hold funds in a fiduciary capacity and segregate such funds, or written agreements which contain all the elements for finding the existence of an express trust." *Fravel*, 485 B.R. at 16. Neither of those circumstances are explicitly present in this case and no reasonable inferences could be drawn in Jones's favor to point the Court toward those findings. As such, Jones cannot prevail with respect to his claim that Dyer's debt to him is nondischargeable for "fraud or defalcation which acting in a fiduciary capacity" under § 523(a)(4).

Jones also cannot show that Dyer's debt to him should be nondischargeable under §

13

523(a)(4) due to embezzlement because the Retirement Account proceeds Ms. Dyer transferred to the Defendant did not belong to Jones. *See Lento v. Marshall (In re Marshall)*, 497 B.R. 3, 13 (Bankr. D. Mass. 2013) ("[B]efore a creditor can make a claim of nondischargeability for embezzlement, she must show that the property allegedly embezzled was her property." (quoting *Freer v. Beetler (In re Beetler)*, 368 B.R. 720, 726–27 (Bankr. C.D. Ill. 2007))). The Agreement made clear that the Retirement Account proceeds belonged to the Defendant once Ms. Dyer transferred her interest in the Retirement Account to him. Although the Agreement identified certain marital debts that Dyer was to pay once the transfer was made, it in no way provided that the Retirement Account proceeds belonged to those creditors—particularly not Jones, who was only to receive payment if any funds remained after other creditors were paid. Thus, because the Retirement Account proceeds belonged to Dyer[9] once the Retirement Account was liquidated, Jones's § 523(a)(4) nondischargeability claim based on embezzlement must fail as a matter of law.

Finally, Jones cannot prevail on his § 523(a)(6) nondischargeability claim. To show that a debt is nondischargeable under § 523(a)(6), the creditor must establish not only that the debtor injured the creditor or his property willfully and maliciously, but that "such injury gave rise to the debt at issue." *Kirwan*, 558 B.R. at 13. The Court has already concluded that Jones had no right to payment of Retirement Account proceeds under the Agreement as a trust beneficiary and that Jones had no interest in the proceeds. Jones has offered no basis in the record from which Court could determine that Dyer's failure to make payments in accordance with the Agreement constituted conversion of property of Jones or constituted an act causing a willful or malicious injury by the Debtor of Jones.

---

[9] As previously noted, the Court makes no determination whether Dyer held the Retirement Account proceeds in trust for the benefit of Ms. Dyer.

### VI.    Conclusion

While the Court is sympathetic to what must have been very difficult circumstances facing Jones in this matter, given the loss of his daughter and the apparent use of the Retirement Account proceeds by Dyer in a manner that may have been contrary to Dyer's Agreement with Jones's daughter, the Court concludes that there are no material facts in dispute that would, if proven, permit Jones to meet his burden of proof with respect to each of the Counts of his Complaint. For the reasons set forth above, summary judgment will enter in favor of Dyer on all counts of the Complaint. A separate order consistent with this memorandum shall enter.

Dated: February 8, 2018                                By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge